## MURRAY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Term. June 1, 1906.)

1. CARRIERS—LOSS OF GOODS—LIABILITY.

A carrier stored unclaimed freight in a warehouse. The consignor delivered to L., an employé in the general freight agent's office, a bill of lading, and signed an indemnity agreement, made out by L., constituting the carrier an agent in returning the shipment and agreeing to save the carrier harmless. L. erroneously stated the date of the shipment in the indemnity agreement, and the general freight agent, in ordering the agent at the destination of the goods to return them, failed to give the date of the shipment. Subsequently, on the carrier failing to act, the warehouseman sold the goods. *Held,* that the carrier was liable for the value of the goods.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—RATIFICATION.

The letter of the general freight agent, to whom the indemnity agreement was addressed, written to the agent at the destination of the goods, was a ratification of the contract of employment made by L.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by John Murray against the New York Central & Hudson River Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, DAVIS, and CLINCH, JJ.

Walter L. Bunnell, for appellant.

Charles C. Paulding (William Mann, of counsel), for respondent.

CLINCH, J. The facts are not in dispute. On October 19, 1904, plaintiff's assignors, Ferris & Kenworthy, shipped to Buffalo two cases of duplicators, consigned to "Ferris & Kenworthy, or order, notify J. H. Smith, Buffalo, N. Y." The property was unclaimed at Buffalo, and under section 46 of the railroad law was stored in a storage warehouse. On October 23, 1905, Charles A. Kenworthy called at the office of L. M. Allen, the general Eastern freight agent of defendant, told a Mr. Luyster, an employé of defendant, that the goods in question had been the subject of a lawsuit, and that he had just got the bill of lading, and asked what he thought the charges would be on it, stating that if they were going to be heavy he "would rather go without the goods than pay twice what they are worth." Luyster informed him, "You have got to take that chance." Whereupon Kenworthy said, "All right," gave him the original bill of lading, and took a duplicate bill as a receipt, signing at the same time an indemnity agreement which constituted defendant plaintiff's assignors' agent for the purpose of returning the shipment to them (Ferris & Kenworthy), and agreed to save the company harmless "from any lawsuit, legal proceeding, loss, damage, expense, counsel fees, costs, and charges arising from or caused by your attempt to comply with this request." It appears that the duplicate bill of lading was incorrectly dated October 19, 1905, instead of October 19, 1904. The indemnity agreement seems to have had the date changed, but the agent who made it out swears that when it was signed it was dated 1905. However this may be, the defend-

ant's agent, Allen, wrote to the Buffalo agent, Pollock, ordering the goods returned.. In that letter of advice the waybill was referred to as simply October 19th, no year being given. The Buffalo agent was unable to locate the shipment, and so notified the New York agent, Allen, by a penciled memorandum on the foot of his (Allen's) letter, which was returned. Allen's letter was dated October 27, 1905, and the reply from Pollock, the Buffalo agent, was received October 31, 1905. Nothing further was done by the railroad company, and the goods were sold by the warehouse in Buffalo on November 7, 1905.

Plaintiff seeks to hold the defendant responsible on the theory that they were negligent in not having gotten the goods from the storage warehouse between the dates of October 23, 1905, and November 7, 1905. It seems to be apparent that the defendant's agent, who had the original waybill, was careless in not making out the duplicate waybill as of 1905, instead of 1904, and also making the same mistake as to the indemnity agreement; and the letter of Allen to Pollock was written carelessly, in that it contained no year date, and hence failed to secure a prompt location of the shipment. As to this defendant contends that Kenworthy signed the indemnity receipt when it was incorrectly dated, and also took away the duplicate waybill bearing an incorrect date. That is no doubt true. But the indemnity receipt and the duplicate waybill were made out by defendant's own agent, and he had in his possession and the company retained throughout the original waybill, which contained the correct date and upon which they were bound to act. It is clear that with ordinary diligence, inasmuch as they put the goods in the storage warehouse and must have held its receipt, they could have located the shipment and started it back before November 7th, when the goods were sold. They cannot deny the authority of Luyster to contract for them. The indemnity agreement is addressed to Allen, their general Eastern freight agent, and his letter to Pollock, the Buffalo agent, is a sufficient ratification of the contract of employment, whatever that may be. I am of opinion that the contract was sufficient to hold the defendant liable. Kenworthy gave them the waybill, and, as the goods were still constructively in their possession, they should have made proper efforts to return them. They (the defendants) were specially constituted Ferris & Kenworthy's agents for this purpose, and were indemnified for all expenses, "costs and charges" being particularly specified, which would, it seems, require them to pay the warehouse lien, if necessary, and see that the goods were shipped back; or, if that was impossible, it was at least incumbent upon the company to notify Ferris & Kenworthy that they might make such arrangements to defray this expense as were necessary. They failed to use ordinary diligence, and they failed because of the carelessness of an employé to locate the shipment.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.